UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUGH JOHNSON, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No.: 1:12-cv-01881 - JLT <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 28) <br><br> ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF HUGH JOHNSON |

Hugh Johnson asserts he is entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in evaluating the medical evidence and weighing his credibility. For the reasons set forth below, the Defendant's motion for summary judgment is **GRANTED**.

**PROCEDURAL HISTORY**

Plaintiff seeks an award of benefits, alleging he has been disabled since December 31, 2008. (Doc. 13-6 at 3-5.) The Social Security Administration denied his claims at the initial level and upon reconsideration. (Doc. 13-5 at 2-5, 8-15.) After requesting a hearing, Plaintiff testified before an ALJ on March 8, 2011. (Doc. 13-3 at 25.) The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on April 27, 2011. (*Id.* at 25-32.)

1    After the ALJ issued his decision, Plaintiff submitted opinion evidence from two medical sources to the Appeals Council, and requested review of the ALJ's decision. (Doc. 13-3 at 5.) The Appeals Council granted Plaintiff's request for review on August 3, 2012. (*Id.*) Reviewing the new evidence submitted by Plaintiff, the Appeals Council adopted several findings of the ALJ, and concluded Plaintiff was not disabled as defined by the Social Security Act from December 31, 2008 through the decision date of April 27, 2011. (*Id.* at 6.) The Appeals Council's findings became the final decision of the Commissioner of Social Security ("Commissioner").

Plaintiff initiated this action on November 15, seeking judicial review of the decision to deny his applications for benefits. (Doc. 1.) On February 28, 2014, Plaintiff filed his opening brief, asserting the medical evidence establishes that he is disabled and the ALJ erred in evaluating his credibility. (Doc. 26.) In response, Defendant filed a motion for summary judgment on March 26, 2014, arguing the Court "should affirm the Commissioner's final decision." (Doc. 28 at 11.)

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment

that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the fact-finder to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether he (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The finder of fact must consider both testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927, 416.929.

**A.     Relevant Medical Evidence**

In January 2008, Plaintiff reported to Dr. Ajit Khaira he was experiencing low back pain. (Doc. 13-8 at 65.) Dr. Khaira ordered a CT of Plaintiff's spine. Dr. Yoshi Chang determined there was "normal contour of the spine," "no spondylolisthesis or spondylolysis," and the "SI joints [were] unremarkable." (*Id.*) Further, Dr. Chang found the disc spaces and vertebral heights were intact. (*Id.*)

Plaintiff continued to report low back pain, and Dr. Khaira ordered an MRI of Plaintiff's lumbar spine in May 2008. (Doc. 13-8 at 64.) Dr. Phillip Tran determined Plaintiff L1-L2 and L2-L3 levels were unremarkable; the L3-L4 level had "minimal circumferential disc bulge with superimposed central disc protrusion" and "[d]egenerative disc desiccation; and the L4-L5 level had "minimal-mild

circumferential disc bulge with an annular fissure or high intensity zone in midline." (*Id.*)  Dr. Tran found "[n]o significant central canal or foraminal stenosis" at the L5-S1 level." (*Id.*)

In October 2008, Plaintiff described his low back pain as "7 - 8/10." (Doc. 13-8 at 58.) Dr. Khaira noted Plaintiff reported the medication was "not really working," and referred Plaintiff to physical therapy and pain management. (*Id.*)

Maria Gruszczynski, a physical therapist, evaluated Plaintiff upon the referral of Dr. Khaira on March 26, 2009. (Doc. 13-8 at 30, 39.) Plaintiff described his pain as "sharp," and averaging a "7/10." (*Id.* at 30.) Ms. Gruszczynski noted Plaintiff was "resistant to therapy" and would "not do anything that might make his back hurt." (*Id.*) She was unable to assess Plaintiff's range of motion and strength due to his "unwillingness to move in any motion he feels may hurt his back." (*Id.*) She recommended that Plaintiff attend physical therapy twice a week for a total of four weeks. (*Id.* at 31.) Dr. Khaira agreed with the plan of care. (*Id.*)

Plaintiff attended eight physical therapy sessions, but reported there was "no difference from the beginning of treatment." (Doc. 13-8 at 32.) However, Ms. Gruszczynski noted that "during the course of treatment [Plaintiff] did report pain levels of 5 and 6/10." (*Id.*) In addition, she noted that Plaintiff "reported that he was not consistent at home with his home exercise program." (*Id.*) She concluded, "Although [Plaintiff] did have minimal [range of motion] gains, he would not benefit from further physical therapy services secondary to lack of functional gains." (*Id.*) Plaintiff was discharged from physical therapy on April 28, 2009. (*Id.*)

Plaintiff had an x-ray of his spine taken on September 8, 2009. (Doc. 13-8 at 2.) Dr. Diana Artenian determined Plaintiff did not have any "significant disc space narrowing" in his lumbar spine, but found facet sclerosis at L5-S1. (*Id.*)

Dr. Steven Stoltz performed a consultative examination on September 17, 2009. (Doc. 13-8 at 3.) Dr. Stoltz noted that Plaintiff reported "a history of back pain, asthma and hypertension." (*Id.*) Plaintiff informed Dr. Stoltz that he did not have "any particular triggers" and that he did not have severe back pain every day. (*Id.*) Further, Dr. Stoltz observed that Plaintiff "had quite a slow gait" when walking around the waiting room. (*Id.* at 7.) During the examination, Plaintiff told Dr. Stoltz that "he [did] not do any bending whatsoever secondary to his back pain." (*Id.* at 6.) Dr. Stoltz

4

observed:

> In the seated position the claimant showed very little effort with any hip flexion. In the supine position he had a moderate severe degree of resistance to my passive movement of either leg for straight leg testing. He was using a back brace which was removed for my proper evaluation. While standing he had no direct spinal tenderness or kyphoscoliosis. He refused to do any bending secondary to his back pain.

(*Id.* at 6.) Dr. Stoltz determined Plaintiff had "good active motion" and his strength was "5/5 in all extremities." (*Id.* at 7.) According to Dr. Stoltz, Plaintiff's "physical examination findings [were] somewhat inconsistent in regards to his complaints of low back pain." (*Id.*) Dr. Stoltz opined Plaintiff could perform postural activities "on a frequent but not continuous basis." (*Id.*) Dr. Stoltz stated he would "limit [Plaintiff] from lifting anything greater than 50 pounds on an occasional basis." (*Id.*)

Dr. Charles Fracchia reviewed the record on October 5, 2009. (Doc. 13-8 at 13.) Dr. Fracchia opined Plaintiff was "functionally non severe" based upon "the findings of no evidence of significant disease on lumbar spine x-ray and examination findings [that] were reportedly mainly limited by cooperation." (*Id.*) Dr. Jackson affirmed this opinion on December 22, 2009. (*Id.* at 27.)

On October 13, 2009, Plaintiff had a CT scan of his cervical spine after reporting neck pain to Dr. Khaira. (Doc. 13-8 at 56.) Dr. Jason Roberts opined Plaintiff had "[d]isc height loss" and "slight marginal osteophytosis… consistent with the presence of degenerative disc change" at the C5-6 level." (*Id.*) The other levels of Plaintiff's spine showed "well maintained disc spacing." (*Id.*) Dr. Roberts concluded Plaintiff had "[m]ild to moderate degenerative disc change" in his cervical spine. (*Id.*)

In March 2010, Plaintiff reported he had right hip pain, and Dr. Khaira ordered a CT scan of the hip. (Doc. 13-8 at 55.) Dr. Fred Logalbo determined the results were "unremarkable," though Plaintiff had "[p]ossible lipoma in the subcutaneous tissues." (*Id.*)

On November 25, 2010, Dr. Khaira completed a "Licensed Physician's Statement" and opined Plaintiff was temporarily disabled due to chronic back pain. (Doc. 13-8 at 45.) Dr. Khaira opined Plaintiff should not perform any weight lifting and should avoid bending. (*Id.* at 46.) Dr. Khaira believed Plaintiff needed a "referral to pain/ back specialist for [a] disability evaluation." (*Id.*)

Dr. Khaira completed a questionnaire regarding Plaintiff's limitations and abilities on January 20, 2011. (Doc. 13-8 at 53.) Dr. Khaira opined Plaintiff's chronic back pain precluded him from lifting 10 pounds frequently and 20 pounds occasionally during an 8-hour workday. (*Id.*) Dr. Khaira

did not identify any objective medical evidence in support of the opinion, but stated that the opinion was based upon Plaintiff's "symptoms." (*Id.*) According to Dr. Khaira, Plaintiff was able to sit four hours at one time, and could stand and/or walk for less than one hour at one time. (*Id.*) However, Dr. Khaira did not opine as to any other work limitations, explaining that Plaintiff needed to have a "workplace disability evaluation." (*Id.*)

Dr. Sina Solyman provided a statement regarding Plaintiff's chronic pain management on July 27, 2011. (Doc. 13-8 at 72.) Dr. Solyman noted Plaintiff had been diagnosed with "Cervical Disc Bulging with left upper extremity radiculopathy, Lumbar disc bulging with radiculopathy affecting the bilateral lower extremities and chronic pain syndrome." (*Id.*) Dr. Solyman opined,

> With regards to his physical disability, this patient has the following work restrictions:
> No prolonged standing, sitting, or walking.
> No repetitive bending or stooping.
> No lifting more than 10 pounds.
> No pushing/pulling more than 20 pounds.
> No repetitive pushing/pulling.
> No below waist level activity.
> No squatting, climbing or work at unprotected heights.

(*Id.*) Dr. Solyman noted Plaintiff "may require repeat lumbar epidural injections," and concluded Plaintiff was "not suitable for gainful employment or re-training presently." (*Id.*)

On March 17, 2012, Dr. Khaira completed a second questionnaire in conjunction with Plaintiff's application for General Relief. (Doc. 13-8 at 75.) Although Dr. Khaira opined Plaintiff was unable to work, he declined to specify limitations and work restrictions, noting Plaintiff "need[s] full disability evaluation for capacity to work." (*Id.*, emphasis omitted.)

**B.     Administrative Hearing Testimony**

Plaintiff testified at the hearing before the ALJ on March 8, 2011. (Doc. 13-3 at 36.) He stated that he was born on July 22, 1960, and had graduated from high school. (*Id.* at 41.) Plaintiff reported he had worked as a machine operator making cardboard boxes, and through a temp agency obtained jobs doing "[m]ainly labor work, a lot of boxing, picking up, stacking, various jobs, mailing assembly line work." (*Id.* at 42.) He testified that his last job involved "home services." (*Id.* at 41.)

He reported that he had "chronic back problems," including problems with his nerves. (Doc. 13-3 at 43.) Plaintiff reported he went to physical therapy for his back for about "six to eight weeks."

6

(*Id.* at 44.)  He testified that he did home exercises, and denied that he told the therapist it was not convenient to do exercises at home.  (*Id.*)  He stated that he saw Dr. Khaira "every three months" for his lower back pain, which Dr. Khaira treated with medication, including Hydrocodone and Naproxen.  (*Id.* at 44-45.)  Plaintiff reported this medicine caused itching, but that was "about it."  (*Id.* at 50.)

Plaintiff stated he was unable to get out of bed "the majority of the time," and had "to call [his] children in to help… get dressed."  (*Id.* at 43.)  He testified that he did not cook or do household chores, although he went to the store occasionally.  (*Id.* at 49.)  Plaintiff explained he "basically" spent his time "laying down with a remote in [his] hand."  (*Id.* at 48-49.)  He estimated that he spent about six of eight hours lying down each day.  (*Id.* at 52.)  According to Plaintiff, he was able to tolerate being on his feet for "about 15 minutes" total in an eight-hour work day.  (*Id.* at 47.)  Further, Plaintiff estimated he could sit "[m]aybe 20 minutes" at one time in an eight-hour work day.  (*Id.* at 48.)  When asked the heaviest item he believed he could lift, Plaintiff said that he "don't lift nothing" because of his condition.  (*Id.*)

Plaintiff testified that he was in arrears for child support, and when he collected state disability, his checks were garnished.  (Doc. 13-3 at 46.)

### C.     Findings of the ALJ and Appeals Council

Pursuant to the five-step process, the ALJ determined first that Plaintiff did not engage in substantial gainful activity after the alleged onset date of December 31, 2008.  (Doc. 13-3 at 27.)  Second, the ALJ found Plaintiff's chronic lumbar pain was a severe impairment.  (*Id.*)  Next, the ALJ found Plaintiff's impairment did not meet or medically equal a Listing because Plaintiff had a full range of motion in all directions, and had "no associated sensory, reflex or motor loss associated with the pain."  (*Id.* at 27-88.)  The Appeals Council adopted each of these findings, opining that Plaintiff "had a severe musculoskeletal impairment that caused chronic lumbar pain; and that his impairment did not meet or medically equal one of the listed impairments."  (*Id.* at 6.)

The ALJ found Plaintiff had the residual functional capacity ("RFC") "to perform medium exertional level work as defined in 20 CFR 404.1567(c) and 416.927(c)."  (Doc. 13-3 at 28.)  Likewise, for the reasons articulated by the ALJ, the Appeals Council concluded:

[T]he claimant had the residual functional capacity to lift 50 pounds occasionally and 25

pounds frequently as well as stand, walk or sit for six hours in an eight-hour workday. The claimant was also limited to frequent stooping, kneeling, bending, crouching and crawling.

(*Id.* at 6.) With this RFC, the ALJ found Plaintiff was "capable of performing past relevant work as a home attendant, paperboard box maker, and store laborer." (Doc. 13-3 at 31.) The Appeals Council agreed Plaintiff could "perform his past relevant work as a machine operator." (*Id.* at 6.) Therefore, the Appeals Council found Plaintiff was not disabled from December 21, 2008, through April 27, 2011, the date the ALJ issued his decision. (*Id.* at 6.)

## DISCUSSION AND ANALYSIS

Reviewing both the complaint and the opening brief in this action, it appears Plaintiff argues that the ALJ erred in evaluating the medical record, and in rejecting the opinion of his treating physician, Dr. Khaira. (Doc. 1 at 3; Doc. 26 at 2, 5.) In addition, Plaintiff contends the ALJ erred in finding his subjective complaints lacked credibility, and in considering the fact that he owes child support as part of the credibility determination. (Doc. 1 at 3; Doc. 26 at 5.) On the other hand, Defendant asserts the Commissioner's evaluation of the record was proper, and the credibility findings were supported by substantial evidence in the record. (Doc. 11 at 11.)

### A.   Evaluation of the Medical Evidence

When evaluating the evidence from medical professionals, three categories of physicians are distinguished: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the Court when there is "more than one rational interpretation of the evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and

not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

The opinion of a treating physician that is contradicted by another physician may be rejected with "specific and legitimate" reasons, supported by substantial evidence in the record. *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Here, Dr. Khaira's opinions conflicted with the opinions of Drs. Stoltz, Fraccia, and Jackson. Consequently, the ALJ and Appeals Council were required to identify specific and legitimate reasons for rejecting the opinions of Dr. Khaira.

### 1. Evaluation by the ALJ

The ALJ noted Dr. Khaira provided a statement in which he indicated Plaintiff "could not do weight lifting and was to avoid bending and climbing for one year, secondary to chronic low back pain." (Doc. 13-3 at 31.) In addition, Dr. Khaira "wrote a note exempting the claimant from jury duty for one year due to his medical condition" on February 1, 2010. (*Id.*) However, the ALJ found "these statements are unsupported by his own treatment notes." (*Id.*) The ALJ explained, "Dr. Khaira's records document the claimant's complaints of low back pain, but without any findings on physical examinations to support the claimant's pain complaints." (*Id.*)

The Ninth Circuit has determined an ALJ may reject the opinion of a physician if the opinion is unsupported by medical findings and test reports. *Burkhart v. Bowen*, 856 F.2d 1335, 1339-40 (9th Cir. 1988); *see also*; SSR 96-2p, 1996 SSR LEXIS 9 at *9 (explaining a physician's opinion is not entitled to controlling weight when it "is not well-supported by medically acceptable clinical and laboratory diagnostic techniques"). For example, in *Burkhart*, the ALJ rejected the opinion of a treating physician who provided "no description – either objective or subjective – of medical findings, personal observations or test reports upon which [the physician] could have arrived at his conclusion." *Id.*, 856 F.2d at 1339. Because the physician failed to identify any clinical evidence, the Court determined there was "no error" for the ALJ disregarding the opinion of the treating physician. *Id.* at 1340. Similarly, here, Dr. Khaira did not did identify any objective medical evidence to support the opinion that Plaintiff should not lift any amount of weight, that he could not bend, and that he was unable to work . (*See* Doc. 13-8 at 53, 75.) Rather, Dr. Khaira stated his opinions were based upon Plaintiff's "symptoms." (*Id.* at

53.) Because Dr. Khaira did not support the opinions with clinical evidence or objective medical findings, the ALJ identified a specific and legitimate reason for rejecting the opinions.

Further, the Ninth Circuit has explained that the opinion of a treating physician may be rejected where an ALJ finds inconsistencies between a treating doctor's assessment and his own medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (explaining internal inconsistencies within a physician's report supports the decision to discount the opinion of a physician). Because the ALJ found Dr. Khaira's opinions were inconsistent with his treatment notes, the inconsistency was an additional specific and legitimate reason for rejecting the opinions.

2. Evaluation by the Appeals Council

The Appeals Council reviewed an additional statement provided by Dr. Khaira and an opinion from Dr. Solyman that Plaintiff was unable to work. (Doc. 13-3 at 6.) The Appeals Council noted that "neither statement [was] accompanied by new findings or laboratory test results." (*Id.*) The Appeals Council observed: "Although Dr. Solyman noted that the claimant demonstrated 'neurological deficits in the upper and lower extremities,' her progress notes do not reflect such. Additionally, a consultative examination revealed no neurological deficits, full range of motion and 5/5 strength in all extremities." (*Id.*) Therefore, the Appeals Council rejected the opinion of Dr. Solyman as inconsistent with her treatment notes, and "inconsistent with the longitudinal record." (*Id.*)

As discussed above, the opinion of a physician may be rejected when it is inconsistent with the physician's own medical records. *Tommasetti*, 533 F.3d at 1041; *Morgan*, 169 F.3d at 603. An opinion may also be rejected where it is "unsupported by the record as a whole." *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) (citing *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003)). The conflicting evidence must be identified for the conflict to be considered a specific, legitimate reason for discounting a physician's opinion. *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

Here, the Appeals Council noted that Dr. Solyman stated Plaintiff had "neurological deficits," and that this opinion was unsupported by her progress notes, and no laboratory test results were provided in support of the statement. (Doc. 13-3 at 6.) The Appeals Council observed that Dr. Stoltz

10

performed a neurological examination and found no neurological deficits. (*Id.*) Specifically, he found Plaintiff had "good active motion" and his strength was "5/5 in all extremities." (Doc. 13-8 at 7.) Accordingly, the Appeals Council carried its burden to identify the conflicting evidence, and the inconsistency of Dr. Solyman's opinion with other evidence in the record constitutes a specific, legitimate reason for rejecting the opinion. *See Batson v*, 359 F.3d at 1195; *Cotton*, 799 F.2d at 1408.

### 3. Substantial evidence supports the determinations

The RFC determinations of the ALJ and Appeals Council are supported by substantial evidence in the record. The term "substantial evidence" "describes a quality of evidence ... intended to indicate that the evidence that is inconsistent with the opinion need not prove by a preponderance that the opinion is wrong." SSR[1] 96-2p, 1996 SSR LEXIS 9 at *8. "It need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.*

Significantly, the opinion of an examining physician may be substantial evidence in support of the Commissioner's decision when the opinion is based upon independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). As the ALJ and Appeals Council noted, Dr. Stoltz conducted a physical and neurological examination with generally normal findings. Dr. Stoltz determined Plaintiff had normal ranges of motion in his shoulders, elbows, wrists, hips, knees, and ankles. (Doc. 13-8 at 6-7.) Further, Dr. Stoltz found Plaintiff had "[g]ood tone bilaterally with good active motion" and his strength was "5/5 in all extremities." (*Id.* at 7.) Based upon the examination, Dr. Stoltz concluded Plaintiff was able to perform postural activities on a frequent but not continuous basis," and should be limited "from lifting anything greater than 50 pounds on an occasional basis." (*Id.*) These limitations were incorporated to the RFC, which provides that Plaintiff is able "to lift 50 pounds occasionally and 25 pounds frequently," and perform postural activities including "stooping, kneeling, bending, crouching and crawling" on a frequent basis.

---

[1] Social Security Rulings (SSR) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Though they do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

(*See* Doc. 13-3 at 7.) Because the opinion was based upon independent clinical findings, Dr. Stoltz's opinion is substantial evidence in support of the RFC determination.

Moreover, the opinions of non-examining physicians may be substantial evidence when "consistent with other independent evidence in the record." *Tonapetyan*, 242 F.3d at 1149. Here, Drs. Fracchia and Jackson opined Plaintiff's back pain was not a disabling impairment. (Doc. 13-8 at 13, 27.) Consequently, their opinions are consistent with the determination of Dr. Stoltz, and the opinions of Drs. Fracchia and Jackson constitute substantial evidence, supporting the evaluations of the ALJ and Appeals Council.

Though the medical evidence may be "susceptible to more than one rational interpretation," both the ALJ and Appeals Council set forth specific, legitimate reasons to give less weight to the opinions of Drs. Khaira and Solyman, and substantial evidence in the record supports the decisions. Therefore, the Court must uphold the evaluations of the medical evidence. *See Orn*, 495 F.3d at 630; *see also Matney*, 981 F.2d at 1019.

**B.     The Credibility Evaluation**[2]

To evaluate a claimant's credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility by setting forth clear and convincing reasons for rejecting his subjective complaints. *Id.* at 1036.

An adverse credibility determination must be based on clear and convincing evidence where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ may not discredit a claimant's testimony as to the severity of symptoms only

---

[2] The Appeals Council "adopt[ed] the findings that the claimant's subjective allegations were not credible to the extent that they were inconsistent with the assessed residual functional capacity" "[f]or the reasons set forth by the Administrative Law Judge." (Doc. 13-3 at 3.) Thus, the Court refers only to ALJ's opinion in addressing the credibility evaluation.

because it is unsupported by objective medical evidence. *See Bunnell*, 947 F.2d at 347-48. In addition, the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Factors that may be considered include, but are not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas*, 278 F.3d at 958-59.

Here, the ALJ found "[t]he validity of the claimant's statements and actions are questionable." (Doc. 13-3 at 30.) The ALJ opined Plaintiff's "back pain could reasonably be expected to cause some of the alleged symptoms." (*Id.* at 29.) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible ...." *Id*. According to the ALJ: "[T]he claimant's alleged limitations and inability to perform most activities, i.e. unable to get out of bed, unable to dress and bathe, and unable to drive or to do household chores, could not reasonably be expected as a result of his medically determined impairment, as documented by the medical record." (*Id.*) Supporting these findings, the ALJ considered the objective medical evidence, Plaintiff's lack of cooperation with treatment, inconsistent statements made by Plaintiff at the hearing and to physicians, and Plaintiff's "evasion of his legal obligations." (*Id.* at 29-30.)

1. Objective medical evidence

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it

is a factor that the ALJ can consider in his credibility analysis"). In this case, the ALJ did not base the decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff. Thus, the objective medical evidence was a relevant factor in determining the credibility of his subjective complaints.

If an ALJ cites the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to make a simple statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not credible"). In this case, the ALJ observed: "When asked what is the heaviest he could lift, he said nothing. He does not know if he could lift a gallon of milk…. The claimant describes the inability to raise up his arms to get his shirt on…" (Doc. 13-3 at 29.) The ALJ found this was inconsistent with "[t]he minimal objective findings on physical examinations and radiology testing," including the examination by Dr. Stoltz, who found Plaintiff had "full" range of motion "of all joints and spine." (*Id.*) Further, the ALJ noted the "[s]ensory, motor and reflex findings were all intact" when Dr. Stoltz examined Plaintiff. (*Id.*) Because the ALJ met his burden to identify "what evidence undermines the testimony," the lack of support in the objective medical record was a relevant factor in the ALJ's credibility analysis. *See Holohan*, 246 F.3d at 1208.

2. Plaintiff's lack of cooperation with treatment and examinations

The ALJ observed that Plaintiff "has a history of lack of full cooperation." (Doc. 13-3 at 30.) Although Plaintiff asserts he "cooperated with doctors" (Doc. 26 at 6), the record supports the ALJ's determination that Plaintiff failed to do so. For example, as noted by the ALJ, Plaintiff "did not follow through with his home exercise program" while in physical therapy. (Doc. 13-3 at 29) (*see also* Doc. 13-8 at 32, noting that Plaintiff "reported that he was not consistent at home with his home exercise program"). Further the ALJ observed that, Plaintiff "refused to bend during the examination" with Dr. Stoltz, and would "not put forth his full effort in range of motion testing." (Doc. 13-3 at 30.)

The Ninth Circuit has determined a "lack of cooperation during consultative examinations" is a "specific and convincing reason[]" for discrediting the a claimant's subjective complaints. *Tonapetyan*, 242 F.3d at 1149 (finding no error where the ALJ discredited the claimant's testimony, in part, due to a "lack of cooperation" because the examining physician's noted that the claimant "showed 'poor effort'"). Further, a claimant may be discredited for failure to comply with a "prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Consequently, Plaintiff's failure to cooperate with his physical therapy and failure cooperate with the consultative examinations were proper considerations by the ALJ, and support the adverse credibility determination.

### 3. Inconsistent statements

An ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284. Here, the ALJ noted Plaintiff made inconsistent statements regarding his compliance with physical therapy: "The claimant was questioned at the hearing as to why he did not follow through with home exercises while in physical therapy. He contradicted the physical therapy progress reports by testifying he actually did do the home exercises, and denied telling the physical therapist it was not convenient for him to do the exercises at home." (Doc. 13-3 at 30.) When a claimant makes inconsistent statements regarding compliance with treatment, the inconsistency is a proper factor in a credibility determination. *See Thomas*, 278 F.3d at 958-59; *Fair*, 885 F.2d at 603. Therefore, the inconsistencies between Plaintiff's statements to his physical therapist and statements at the hearing support the ALJ's adverse credibility determination.[3]

### 4. Failure to pay child support

The ALJ noted that Plaintiff "has sought medical verification to relieve him of his obligation" to pay child support. (Doc. 13-3 at 30.) According to Plaintiff, the ALJ erred in considering the fact that he has failed to pay child support as part of the credibility evaluation. (Doc. 26 at 5.) While this fact alone would be insufficient to discredit Plaintiff, the Ninth Circuit has determined an ALJ may consider whether a claimant "may be motivated by secondary gain" as a reason for discrediting testimony. *See*

---

[3] Clearly, the ALJ did not believe Plaintiff's statements made at the hearing related to whether he did the home exercises provided by the physical therapist.

*Coleman v. Colvin*, 524 Fed. Appx. 325, 327 (9th Cir. 2013).

## CONCLUSION AND ORDER

For the foregoing reasons, the ALJ and Appeals Council articulated specific and legitimate reasons for rejecting the opinions of Drs. Khaira and Solyman, and substantial evidence in the record supports the RFC determination by the Appeals Council. Finally, the ALJ satisfied his burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas*, 278 F.3d at 958. Because the proper legal standards were applied, the Commissioner's decision that Plaintiff was not disabled from from December 31, 2008 through the decision date of April 27, 2011 must be upheld. *See Sanchez*, 812 F.2d at 510.

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. Defendant's motion for summary judgment (Doc. 28) is **GRANTED**;
2. The decision of the Commissioner of Social Security is **AFFIRMED**; and
3. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Carolyn Colvin, Acting Commissioner of Social Security, and against Plaintiff Hugh Johnson.

IT IS SO ORDERED.

Dated: **May 6, 2014**      **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE